IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FRANCISCO S., individually and as guardian of M.S. a minor, and M.S., <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY and WORLD BANK GROUP MEDICAL INSURANCE PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER (1) GRANTING IN PART AND DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 37), AND (2) DENYING DEFENDANTS' MOTION TO TRANSFER VENUE (ECF NO. 38)** <br><br> Case No. 2:18-cv-00010-EJF <br><br> Magistrate Judge Evelyn J. Furse |

Aetna Life Insurance Company ("Aetna") and the World Bank Group Medical Insurance Plan ("World Bank") move the Court[1] to dismiss Plaintiffs Francisco S. and M.S.'s (collectively "Mr. S.") Amended Complaint "with prejudice and on the merits." (Defs.' Mot. to Dismiss Am. Compl. ("Mot.") 1, ECF No. 37.) Aetna and the World Bank argue this Court should dismiss Mr. S.'s breach of contract claim because Mr. S. fails to plead diversity jurisdiction sufficiently. (Id. at 2.) The World Bank further asserts Mr. S.'s Amended Complaint fails because the World Bank Group Medical Insurance Plan "is not a proper defendant that can be sued." (Id.) Additionally, the World Bank contends while Mr. S. fails to name the World Bank as a defendant, allowing him to amend to include the World Bank would prove futile because the International Organizations Immunities Act ("IOIA") shields the World Bank from suit. (Id. at 2, 7–9.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 12.)

Lastly, Aetna contends this Court should dismiss Mr. S.'s claims against Aetna because Aetna does not insure the benefits under the Plan and therefore lacks privity of contract with Mr. S. (Id. at 9–10.)

Having considered the parties' briefing, the Court finds Mr. S. effectively named the World Bank as a party, and the Court has original jurisdiction over the claims against the World Bank. Furthermore, under the new rubric set forth in Jam v. Int'l Fin. Corp., 586 U.S. __, 139 S. Ct. 759, 772 (2019), the World Bank lacks immunity for commercial activities, which, in this case, provision of employee health insurance is. For these reasons, the Court DENIES the World Bank's portion of the Motion to Dismiss. The Court GRANTS Aetna's portion of the Motion to Dismiss because the Complaint does not allege it is a party to the insurance contract, and Mr. S. does not contest dismissal, therefore Mr. S. fails to state a claim against Aetna.

Given the Court's ruling granting the Aetna Defendants' Motion to Dismiss, for the reasons discussed below, the Court DENIES the Aetna Defendants' Motion to Transfer Venue (ECF No. 38.)

## FACTUAL AND PROCEDURAL HISTORY

Mr. S. filed a Complaint alleging that Aetna and the World Bank violated ERISA, 29 U.S.C. § 1132(a)(1)(B), when they failed to pay for his daughter's medically necessary treatment. (Compl. ¶¶ 54–60, ECF No. 2.) The Court granted Aetna and the World Bank' Motion to Dismiss Mr. S.'s ERISA claim and gave Mr. S. fourteen days to amend his Complaint to establish this Court's diversity jurisdiction over "a non-ERISA claim." (Mem. Dec. & Order Granting in Part & Denying in Part Defs.' Mot. to Dismiss (ECF No. 14) 8, ECF No. 35.) On April 9, 2019, Mr. S. filed his Amended Complaint.

(Am. Compl., ECF No. 36.)  The Court generally takes the factual allegations in the Amended Complaint as true, <u>Kan. Penn Gaming, LLC v. Collins</u>, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  The Court takes judicial notice of the relevant document in this case—the Summary Plan Description—in reaching its conclusion on whether subject matter jurisdiction exists over the World Bank because the parties do not dispute the document's authenticity. <u>See</u> <u>Jacobsen v. Desert Book Co.</u>, 287 F.3d 936, 941–42 (10th Cir. 2002) (taking judicial notice of two books in a copyright case while ruling on a 12(b)(6) motion to dismiss); <u>see</u> <u>also</u> <u>Thurman v. Steidley</u>, No. 16-CV-554-TCK, 2017 WL 2435287, at *4 (N.D. Okla. June 5, 2017) (unpublished) (taking judicial notice of state court records while ruling on a 12(b)(1) motion to dismiss where defendant facially attacked plaintiff's Complaint). Furthermore, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). … In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion."  <u>Holt v. United States</u>, 46 F.3d 1000, 1003 (10th Cir. 1995) (internal citations omitted) (citing <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n. 5 (10th Cir. 1987)).  Thus the Court also considers the declarations submitted by the parties.  The following facts provide the background for this decision.

Mr. S. and M.S. reside in Maryland and intend to remain there.  (Am. Compl. ¶¶ 1-2, ECF No. 36; Decl. of Francisco S., ¶ 4, Ex. A, ECF No. 43–1; Decl. of M.S., ¶ 4, Ex. B., ECF No. 43–2.)  Mr. S. works for the World Bank in Washington, D.C.  (Am. Compl. ¶ 4, ECF No. 36.)  As an employee benefit, the World Bank provides Mr. S. with health insurance through a self-funded employer sponsored benefit plan—World Bank

Group Medical Insurance Plan.  (Am. Compl. ¶¶ 5-7, ECF No. 36; Decl. of Sean Kiernan in Supp. of Mot. to Transfer ("Kiernan Decl."), Ex. A, ¶ 5, ECF No. 38–1.)  Mr. S. participates in the Plan; his daughter M.S. is a beneficiary.  (Am. Compl. ¶ 7, ECF No. 36.)  The World Bank and its employees jointly fund the Plan.  (Plan Summary Description, ECF No. 28 at 3.)  Aetna provides third-party claims administrator services to the Plan and "denied claims for coverage in connection with mental health care provided to M."  (Am. Compl. ¶ 9, ECF No. 36.)  Aetna resides in Connecticut, (id. at ¶ 9) and Florida, (Defs.' Consol. Reply Supp. Mot. to Dismiss Am. Compl. & Mot. to Transfer Venue ("Reply") 10, ECF No. 46).

M.S. received mental health treatment from the Outback and New Haven facilities in Utah.  (Am. Compl. ¶¶ 8, 21–53, ECF No. 36.)  Aetna denied coverage for M.S.'s treatment at Outback because M.S. "was 'not actively suicidal, violent, manic, psychotic, severely depressed, or otherwise in crisis.' "  (Id. at ¶¶ 25–26.)  Aetna upheld its denial of M.S.'s treatment at Outback on the same basis as its original denial.  (Id. at ¶ 33.)

Aetna also denied coverage for M.S.'s treatment at New Haven because M.S. did not have "a realistic plan and intent to commit suicide", and thus she could receive treatment "at a less intensive level of care or in another setting."  (Id. at ¶¶ 34–35.)  Aetna upheld its denial of M.S.'s treatment at New Haven on the same basis as its original denial.  (Id. at ¶ 52.)  Mr. S. alleges Aetna violated the terms of the Plan when it failed to "provide coverage for M.'s medically necessary treatment."  (Id. at ¶ 55.)   Mr. S. specifically contends "[t]he Plan and/or Aetna is/are responsible to pay M.'s medical expenses as benefits due under the terms of the Plan together with prejudgment

interest." (Id. at ¶ 57.)  Mr. S. seeks over $175,000 in damages from Aetna's actions "in the form of denial of payment for medical services."  (Id. at ¶ 56.)

The Aetna Defendants again move to dismiss.  (Mot., ECF No. 37.)  They also filed a Motion to Transfer Venue.  (Defs.' Mot. to Transfer Venue ("Venue Mot."), ECF No. 38.)  Mr. S. filed a consolidated opposition to these Motions.  (Pls.' Consol. Mem. in Opp'n to Defs.' Mot. to Dismiss Am. Compl. & Mot. to Transfer Venue ("Opp'n"), ECF No. 43.)  The Aetna Defendants filed a consolidated Reply.  (Reply, ECF No. 46.) Because the Court allowed the parties to file consolidated briefing addressing both the Motion to Dismiss and Motion to Transfer Venue, the Court considers arguments from both memoranda.  Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and issues this opinion on the written memoranda.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' "  Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Twombly, 550 U.S. at 547).  " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' "  Id.  (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In reviewing a motion to dismiss, the court accepts as true the well-pled factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).  "[A] plaintiff must offer specific factual allegations to support each

5

claim." Kan. Penn Gaming, 656 F.3d at 1214 (citing Twombly, 550 U.S. at 555). A complaint survives only if it " 'states a plausible claim for relief,' " though courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." Id. at 1214–15 (quoting Iqbal, 556 U.S. at 679).

**DISCUSSION**

## I.    FEDERAL JURISDICTION OVER THE WORLD BANK

Because federal courts have limited jurisdiction, the Court must determine whether it has subject matter jurisdiction before ruling on the merits of the case. Penteco Corp. P'ship-1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991); Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. "Subject-matter jurisdiction involves a court's authority to hear a given type of case." Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1224 (10th Cir. 2004). Federal district courts "have limited subject matter jurisdiction and may only hear cases 'when empowered to do so by the Constitution and by act of Congress.' " Id. at 1225 (quoting 16 James Wm. Moore, Moore's Fed. Practice § 108.04(2) (3d ed. 2003)). "Since federal courts are courts of limited jurisdiction, there is a presumption against [] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." Penteco, 929 F.2d at 1521.

The World Bank first argues Mr. S. fails to name the World Bank as a defendant, naming instead World Bank Group Medical Insurance Plan, and allowing Ms. S. leave to amend to name the World Bank as a party would prove futile because the IOIA shields the World Bank from suit. (Mot. 7–9, ECF No. 37.) The World Bank attached a

Declaration from Sean Kiernan, a program manager for insurance programs at the World Bank to the Motion to Transfer Venue.  (See Kiernan Decl., Ex. A, ECF No. 38–1.)  In his Declaration, Mr. Kiernan attests that the World Bank Group Medical Insurance Plan and the World Bank constitute the same entity.  (Id. at ¶ 5.)  Mr. S. does not challenge that fact.  (See Opp'n 9–14, ECF No. 43.)  Accordingly, the Court treats the World Bank Group Medical Insurance Plan as if Mr. S. had named the World Bank as a party.

In its Motion for Change of Venue, World Bank cites 22 U.S.C. § 286g as a basis to find venue proper in Washington, D.C.  (Venue Mot. 9 n.41, ECF No. 38.)  What neither party mentions is that this statute explicitly authorizes federal jurisdiction over any claim against the World Bank.

> [A]ny such action at law or in equity to which either the Fund or the Bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of any such action.

22 U.S.C. § 286g.  Thus, this Court has jurisdiction over the case and arguments about citizenship no longer have relevance to the jurisdictional contentions.

## II.    WORLD BANK IMMUNITY

The World Bank argues this Court lacks subject matter jurisdiction over Mr. S.'s claims against it because the IOIA shields it from suits involving its internal relations. (Mot. 7–9, ECF No. 37.)  Mr. S. contends that while the IOIA shields the World Bank from suit, the World Bank expressly waived its immunity "based on the terms of the document governing the Plan and establishing a contractual relationship with [Mr. S.]." (Opp'n 7, ECF No. 43.)  Mr. S. specifically points to Subsection 16.17 of the Plan titled "Legal Action", which states "[n]o legal action can be brought by a member or provider

to recover a benefit more than three years after the deadline for filing claims" as support for his contention that the World Bank expressly waived its immunity from suit for employee health benefit claims.  (Id. at 8; Summary Plan Description 71, ECF No. 28.)  Additionally, Mr. S. contends the "World Bank's internal grievance review procedure is not available to its employees for their medical benefits claims," coupled with the Plan's three-year statute of limitations provision, which "demonstrates that [the] World Bank waived its immunity relating to suits for medical benefits."  (Opp'n 9, ECF No. 43.)

The World Bank argues one cannot construe the language in Subsection 16.17 to contain "an unambiguous waiver of immunity when it says nothing about the World Bank's amenability to suit."  (Reply 6, ECF No. 46.)  Moreover, the World Bank contends because the Plan "prohibits the World Bank from intervening on substantive claim issues and/or reviewing claims, due to medical confidentiality," it "cannot later be subject to any legal actions with respect to [such] claims," in which it had no involvement.  (Id. at 7–8.)

The Court finds the World Bank lost its immunity from suit for this cause of action because the claim arises out of commercial activity within the United States in which the World Bank engaged.

Established in 1944, the World Bank is an international organization whose purposes include assisting in the reconstruction and development of members' territories, promoting private foreign investment through loans and other investment, and promoting long-range balanced growth of international trade.  Articles of Agreement of the International Bank for Reconstruction and Development art. 1(i)–(iii), Dec. 27, 1945, T.I.A.S. No. 1502, 60 Stat. 1440 [hereinafter "Articles of Agreement"].  The United

States recognizes the World Bank as an international organization entitled to the protections and privileges under the IOIA.  22 U.S.C. § 288a(b).  The IOIA specifically provides that an international organization's "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract."  22 U.S.C. § 288a(b).  In 2019, the protections and privileges available to World Bank under the IOIA changed significantly because of Jam v. Int'l Fin. Corp., 586 U.S. __, 139 S. Ct. 759, 772 (2019).  In Jam, the United States Supreme Court held that the current Foreign Sovereign Immunities Act governs the immunity of international organizations, rather than the foreign sovereign immunity as conceived of in1945.  Id. at 767, 772.  As a result, international organizations, like the World Bank, no longer enjoy absolute immunity from suit.  Id. at 771.  Thus, most case law analyzing World Bank immunity under the absolute immunity rubric now lacks any precedential value.  "The decision, while resting on a relatively narrow issue of statutory interpretation, fundamentally changes the landscape for international organizations.  Such organizations now face substantially increased exposure to litigation and potential liability, with few parameters indicating the limits of that exposure."  Nancy Perkins & Sally Pei, Jam v. Int'l Finance Corp., ASIL Insights, Vol. 23, Issue 3 (Am. Soc. of Int'l Law 2019).  Neither party addressed the significance of this change in its briefing.  Given this major shift, the Court proceeds to analyze the World Bank's immunity under the Foreign Sovereign Immunities Act and the case law interpreting it.

The Foreign Sovereign Immunities Act presumes immunity from suit unless a statutory exemption applies. 28 U.S.C. §§ 1604-1607. Relevant statutory exemptions include explicit or implicit waiver, § 1605(a)(1), and commercial activity conducted in the United States, § 1605(a)(2). Under the Foreign Sovereign Immunities Act

> analysis, once the defendant establishes that it is a foreign state entitled to immunity, the plaintiff bears the burden of production to make an initial showing that an FSIA exception to immunity applies. If the plaintiff carries its initial burden, the defendant bears the ultimate burden of proving by a preponderance of the evidence that the claimed exception does not apply in the particular case.

Hansen v. PT Bank Negara Indonesia (Persero), TBK, 601 F.3d 1059, 1062 (10th Cir. 2010) (footnotes omitted) (citing Orient Mineral Co. v. Bank of China, 506 F.3d 980, 991-92 (10th Cir. 2007)).

The parties agree that the World Bank receives protection from the IOIA. The World Bank certainly claims immunity under the IOIA. While Mr. S. did not analyze the World Bank's claim of immunity under the Foreign Sovereign Immunities Act, he strongly contends that the World Bank explicitly waived its immunity through the Plan documents altering the limitation period to bring legal claims under the Plan. (Opp'n 7, ECF No. 43.) According to Mr. S. the three-year statute of limitations under the Plan, coupled with the fact the World Bank "prescribed a separate process for resolution of disputed medical insurance claims[, which are not subject to the World Bank's internal grievance review process,] demonstrates that [the] World Bank waived its immunity relating to suits for medical benefits." (Id. at 9.)

While the Tenth Circuit does not appear to have addressed the issue, the circuits follow " 'the virtually unanimous precedents construing the implied waiver provision narrowly.' " World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1161

n.11 (D.C. Cir. 2002) (quoting <u>Creighton Ltd v. Gov. of the State of Qatar</u>, 181 F.3d 118,

122 (D.C. Cir. 1999) (quoting <u>Shapiro v. Republic of Bolivia</u>, 930 F.2d 1013, 1017 (2d

Cir. 1991))).  Courts generally only find implied waiver when the sovereign agreed to

arbitrate, adopted a particular choice of law, or filed a responsive pleading without

raising the sovereign immunity defense.  <u>World Wide Minerals</u>, 296 F.3d at 1161 n.11.

None of these circumstances appear in this case.  Thus the Court returns to the explicit

waiver inquiry.

      "In general, explicit waivers of sovereign immunity are narrowly construed 'in

favor of the sovereign' and are not enlarged 'beyond what the language requires.'  A

foreign sovereign will not be found to have waived its immunity unless it has clearly and

unambiguously done so."  <u>Id.</u> at 1162 (quoting <u>Library of Cong. v. Shaw</u>, 478 U.S. 31,

318 (1986)) (citations omitted).

> Article VII section 3 of the World Bank's Articles of Agreement provides
>
> Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.  No actions shall, however, be brought by members or persons acting for or deriving claims from members.  The property and assets of the Bank shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Bank.

Articles of Agreement, art. VII § 3, 60 Stat. 1457–58.  Further the Plan governing the

World Bank's health insurance benefits specifically includes a "Legal Action" provision in

Subsection 16.17, which states: "[n]o legal action can be brought by a member or

provider to recover a benefit more than three years after the deadline for filing claims."

(Plan Summary Description, ECF No. 28 at 71.)

The introduction to the Summary Plan Description reads as follows:

The [Medical Insurance Plan (MIP)] is a self-insured plan that is funded by member contributions and the Bank. The MIP contracts with three Insurance Administrators who have fiduciary responsibility for the plan benefits and make all claim decisions and handle appeals. The basis for most MIP claim decisions is medical necessity and determination of medical necessity is solely the responsibility of the insurance administrator. There is no internal grievance process for MIP claims. … To protect member confidentiality, the World Bank Group does not receive confidential member information from the administrators, nor can the World Bank Group intervene on claim decisions. There is a claim appeal process in place for each insurance administrator outlined in this Summary.

(Plan Summary Description, ECF No. 28 at 3.) Mr. S. specifically points to the "Legal Action" provision in Subsection 16.17, which states: "[n]o legal action can be brought by a member or provider to recover a benefit more than three years after the deadline for filing claims." (Id. at 71.) While that language certainly contemplates that employees can file legal action after exhausting the appeal remedies in the Plan, Tenth Circuit precedent has found that limitations provision is not express enough to evidence a waiver of sovereign immunity. Flute v. United States, 808 F.3d 1234, 1239–40 (10th Cir. 2015). Therefore, the Court does not find an express waiver in Subsection 16.17.

Next, the Court turns to the commercial activity exemption. 28 U.S.C. § 1605(a)(2). Considering Mr. S.'s arguments in the Foreign Sovereign Immunities Act context, the Court finds Mr. S.'s contentions about the Plan prohibiting intervention on substantive claim issues, delegating those issues to a third party administrator, and not providing an internal grievance procedure as putting forth evidence that the commercial activity exemption applies. The Plan states that the World Bank Group "cannot intervene on substantive claim issues, and is prohibited (due to medical confidentiality) from reviewing your claim. … MIP claims decisions are not subject to the World Bank

Group internal grievance mechanisms such as the Appeals Committee or the Administrative Tribunal." (Plan Summary Description, ECF No. 28 at 75.)

Under <u>Jam</u>, the World Bank loses sovereign immunity when the case "is based upon a commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2). The parties agree the case is based on denial of insurance coverage for an employee's dependent's health care. The employee lives and works for the World Bank in the United States; the dependent received the medical care in the United States; and the third-party administrator who denied the claim did so in the United States. Thus, the case is based on activity carried on in the United States. <u>OBB Personenverkehr AG v. Sachs</u>, 577 U.S. __, 136 S. Ct. 390, 396 (2015) (explaining how to apply the "based upon" analysis).

The question then becomes whether providing health insurance to one's employees constitutes a commercial act. Section 1605(a)(2) "reflects Congress's intent to restrict a foreign state's immunity ' "to cases involving acts . . . which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform." ' " <u>Southway v. Central Bank of Nigeria</u>, 328 F.3d 1267, 1272 (10th Cir. 2003) (quoting <u>Southway v. Central Bank of Nigeria</u>, 198 F.3d 1210, 1216 (10th Cir. 1999) (quoting H.R. 94-1487, at 14 (1976))). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d).

In the United States, health insurance is a commercial activity provided for in large part through one's employer, public or private. In this case, the World Bank

delegated all its obligations under the plan to a private third-party administrator, Aetna, further demonstrating a commercial course of conduct. As in <u>Republic of Argentina v. Weltoer, Inc.</u>, "[t]he commercial character of the [insurance] is confirmed by the fact that [it is]in almost all respects garden-variety [employee health insurance]." <u>See</u> 504 U.S. 607, 615 (1992) (finding bonds issued by foreign sovereign commercial activity because of their similarity to debt instruments generally). Under these circumstances, the Court finds the World Bank lacks immunity from suit for this case. <u>See</u> <u>accord</u> <u>Merlini v. Canada</u>, 926 F.3d 21, 33 (1st Cir. 2019) (finding employee workers' compensation claim fell under the commercial activity exception to the Foreign Sovereign Immunities Act); <u>but</u> <u>see</u> <u>Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek</u>, 600 F.3d 171, 177-78 (2d Cir. 2010) (distinguishing Jamsostek's activities as the default health insurer to all Indonesian workers from an entity that " 'sell[s] insurance to workers or to employers in any traditional sense.' ").

Accordingly, the Court concludes it has subject matter jurisdiction over the World Bank, and the World Bank lacks immunity from suit. Therefore, the Court DENIES the World Bank's portion of the Motion to Dismiss.

### III.  THE CLAIM AGAINST AETNA

Aetna argues this Court should dismiss Mr. S.'s claims against it with prejudice because Mr. S.'s Amended Complaint fails to allege facts establishing a contract between himself and Aetna. (Mot. 9, ECF No. 37.) Mr. S. concedes a contractual relationship does not exist between himself and Aetna. (Opp'n 5, ECF No. 43.) Mr. S. offers no legal or factual argument for why the Court should not dismiss his Complaint against Aetna. (<u>Id.</u> at 4-5.) However, Mr. S. fails to state a claim against Aetna because

the Amended Complaint fails to allege a contractual relationship exists between himself and Aetna. This Court need not make arguments that Mr. S. did not make in his brief. O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1257 n.1 (10th Cir. 2001).

Accordingly, the Court dismisses Mr. S.'s breach of contract claim against Aetna with prejudice.

## IV. MOTION TO TRANSFER

The World Bank moves to transfer this case to the District of Columbia under 28 U.S.C. § 1404(a). (Venue Mot., ECF No. 38.) Section 1404(a) permits the district court to "transfer any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses in the interest of justice". Even where a specific statute governs the venue of a case, the defendant may still seek to transfer the case to another federal district. Arthur R. Miller, 15 Fed. Prac. & Procedure § 3843 & ns. 16-27 Actions to Which Statute Applies, (4th ed. 2019) (collecting cases).

On a motion to transfer venue, the movant bears the burden to prove the current forum inconvenient. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991). The Court considers the following factors in making its determination:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and, [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

Id. at 1516 (quoting Tx. Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)). Preliminarily, the Court finds factors four and five have no bearing on venue in this case because one cannot reasonably anticipate difficulties enforcing a federal judgement against the World Bank, and neither party questions the ability to obtain a fair trial in either venue.  Mr. S. contends the World Bank fails to meet its burden to justify a change of venue.  (Opp'n 9-14, ECF No. 43.)

Because this Court's jurisdiction in this case arises from federal statute, not diversity, the Court looks first to the federal statute for guidance regarding venue.  28 U.S.C. § 286g bears the title "Jurisdiction and venue of actions".  As to venue, the statute notes that the World Bank is "deemed to be an inhabitant of the Federal judicial district in which its principal office in the United States is located."  The parties all agree that district is the District of the District of Columbia.  As to venue, the statute makes clear that when the World Bank is a defendant in a state court action, it may remove the case to the federal district court in that district.  Nothing in the section directs that venue only lies in the District of Columbia.  Nonetheless, without question, venue over the World Bank would lie in the federal district court for the District of Columbia.

The World Bank contends venue in the District Court of the District of Columbia would be preferable for a host of reasons.

### A.  Plaintiff's Choice of Forum

The World Bank contends Mr. S. and M.S. do not reside in the District of Utah and "there is no connection between the facts giving rise to the lawsuit and Utah." (Venue Mot. 5, ECF No. 38.)

While " 'the plaintiff's choice of forum should rarely be disturbed,' " that choice merits less weight when the plaintiff resides out of the district. Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167-68 (10th Cir. 2010) (quoting Chrysler Credit, 928 F.2d at 965). Indeed, if the case facts bear little relation to the forum, plaintiff's choice receives little weight. Employers Mut., 618 F.3d at 1168.

Mr. S. and M.S. reside in Maryland. Thus their choice of forum does not receive the standard deference. Nonetheless, the facts of the case do relate to the forum because the doctors and medical professionals who recommended and provided the care at issue did so in the District of Utah, and M.S. received that care in the District of Utah. The World Bank cites a number of cases that judges in this district have transferred out of this district when care was provided here but the insurance the parties claimed under and the parties came from other districts. (Venue Mot. 6 n.27, ECF No. 38.) The Court finds this case materially different than those cases. Those cases all involved ERISA claims, and ERISA cases rarely involve fact discovery, and certainly not fact discovery of the health care providers. See, e.g., Richard T.B. v. United Healthcare Ins. Co., No. 2:18-cv-73, 2019 WL 145736, *3 (D. Utah Jan. 9, 2019) (unpublished) (noting review is limited to the administrative record and citing Weber v. GE Gr. Life Assur. Co., 541 F.3d 1002, 1011 (10th Cir. 2008)); Michael M. v. Nexsen Pruet Group Med. & Dental Plan, No. 2:17-cv-1236, 2018 WL 1406600, *5 n.21 (D. Utah Mar. 19, 2018) (unpublished); Is. View Residential Treatment Center v. Kaiser Permanente, No. 1:09-cv-3, 2009 WL 2614682, *3 (D. Utah Aug. 21, 2009) (unpublished) (noting review is limited to the administrative record and citing Jewell v. Life Ins. Co. of Am., 508 F.3d 1303, 1309 (10th Cir. 2007)). By contrast Mr. S. and M.S. allege a breach of contract

because ERISA does not apply to the World Bank.  Therefore, the Court does not limit

its review to the record, and the case has a significant connection to Utah because the

treatment for which the World Bank denied payment occurred in Utah.  Thus this factor

weighs in favor of Mr. S. and M.S.'s choice of forum.

### B.  Accessibility of Witnesses and Sources of Proof

The extent of the World Bank's argument on this factor is "relevant documents

and witnesses would be in Washington, D.C. (where the Plan sponsor and [Mr. S.] are

located and to a lesser extent, Florida (where Aetna makes coverage decisions) and

Maryland (where Plaintiffs reside)."  (Venue Mot. 7, ECF No. 38.)  In its Reply, the World

Bank further explains that the majority of testimony, documents, and depositions will

come from Maryland, Washington, D.C., Florida, and Connecticut.  (Reply 10, ECF No.

10.)

> "The convenience of witnesses is the most important factor in deciding a
> motion under § 1404(a)."  To demonstrate inconvenience, the movant must
> (1) identify the witnesses and their locations; (2) "indicated the quality or
> materiality of the[ir] testimony"; and (3) "show[] that any such witnesses
> were unwilling to come to trial … [,] that deposition testimony would be
> unsatisfactory[,] or that the use of compulsory process would be necessary."

Employers Mut., 618 F.3d at 1169 (quoting Cook v. Atchison, Topeka & Santa Fe Ry.

Co. 816 F. Supp. 667, 669 (D. Kan. 1992) & Scheidt v. Klein, 956 F.2d 963, 966 (10th

Cir. 1992)).  The World Bank fails to make any assertions about unwillingness to come

to trial, inadequacy of depositions, or ineffectiveness of compulsory process for the

witnesses it does identify.

Mr. S. notes that "If any witnesses are called to testify on [medical necessity], the

likelihood is that those witnesses live in Utah."  (Opp'n 11, ECF No. 43.)  The Court

further notes that medical third-party witnesses frequently have very difficult schedules

to work with for litigation purposes and often charge significant amounts of money to appear for depositions and/or produce records.  Additionally, this is not a case where the vast majority of evidence exists in the forum the World Bank proposes.  The World Bank admits the witness and documents in this case come from several different forums.  For all these reasons, this factor weighs in favor of Mr. S. and M.S.'s choice of forum.

### C.  The Cost of Making the Necessary Proof

The World Bank argues that the case proceeding in Utah increases costs because the "bulk" of relevant documents and witnesses are in Washington, D.C. and Florida.  (Venue Mot. 7, ECF No. 38.)  To prevail on this argument the movant must present "evidence concerning the potential costs of litigating the case in [the existing forum]."  Employers Mut., 618 F.3d at 1169.  Furthermore, Mr. S. notes that documentation regarding M.S.'s treatment is all located in Utah.  The Court finds the World Bank takes an unduly narrow view of the evidence in this case as mentioned above.  Furthermore, the World Bank has not presented either evidence or argument about the cost of litigating in Utah as opposed to Washington, D.C.  Therefore, this factor weighs in favor of Mr. S. and M.S.'s choice of forum.

### D.  Difficulties that May Arise from Congested Dockets

The World Bank compares statistics between the District of the District of Columbia and the District of Utah and finds the District of Utah's docket more congested.  Since the filing of the Motion, the District of Utah now has two more full time District Court judges, which changes the work distribution going forward as compared to the rates cited in the briefing.  Even so, the pending cases per judge for 2019 in the

District of Columbia were 349 compared to Utah's 511; the median time to trial in a civil

case was 44.8 months in the District of Columbia and 45.4 months in Utah for the last

year of available data; and the median time to case disposition in a civil case was 4.7

months in the District of Columbia and 9.9 months in Utah. U.S. Dist. Cts., Nat'l Judicial

Caseload Profile, (2019),

https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.p

df (last visited April 3, 2020). Mr. S. argues these variations are relatively minor and

insufficient to warrant a change of venue. (Opp'n 12, ECF No. 43.) This factor weighs

in favor of transferring the case to the District of Columbia.

### E.  The Possibility of the Existence of Questions Arising in the Area of Conflict of Laws

The parties seem to agree that the applicable law for the case will be that of the

District of Columbia. Mr. S. and M.S. have brought a contract claim. The Court does

not foresee and the World Bank does not set forth concern about this Court's ability to

apply the District of Columbia's contract law. Thus this factor weighs against transfer.

### F.  The Advantage of Having a Local Court Determine Questions of Local Law;

Prior to being able to decide the venue question, the Court had to decide the

jurisdictional question and the immunity question, which did involve law with which the

District of the District Columbia likely has greater familiarity and a greater interest.

However, the Court has now decided those issues, and the World Bank fails to explain

what questions of local law remain. Thus this factor weighs against transfer.

### G. All Other Considerations of a Practical Nature that Make a Trial Easy, Expeditious and Economical

The World Bank contends that the proximity of the Mr. S. and M.S. to Washington, D.C. and the World Bank's presence in Washington, D.C. make travel to court for hearings and trial more practical for both parties. (Venue Mot. 9-10, ECF No. 38.) Mr. S. and M.S. argue that this convenience fails to establish a hardship for the World Bank. (Opp'n 13, ECF No. 43.) The Court finds this factor weighs in favor of transfer.

\*\*\*

On balance, the World Bank fails to meet its burden to prove the current forum inconvenient. <u>Chrysler Credit</u>, 928 F.2d at 1515. While the District of Columbia might have been more convenient for the World Bank, the District of Utah is not inconvenient from the perspective of the case as a whole. Therefore the Court DENIES the Motion to Transfer Venue (ECF No. 38).

### <u>CONCLUSION</u>

For the reasons discussed above, the Court DISMISSES the claim against Aetna, DENIES the Motion to Dismiss the World Bank, and DENIES the Motion to Transfer Venue.

DATED this 6th day of April, 2020.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge